**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| USAA CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 4:21-CV-779-JAR |
| v. | ) ) | |
| MICHAEL SCOBEE and LINDA SCOBEE, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff USAA Casualty Insurance Company's Motion for Summary Judgment (ECF No. 62).  This matter is fully briefed and ready for disposition. For the reasons stated herein, the Court grants, in part, and denies, in part, the Motion for Summary Judgment.

**BACKGROUND**

On April 4, 2015, Michael Scobee was injured in a vehicle accident while operating a motorcycle. (USAA Casualty Insurance Company's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("PSUMF"), ¶¶ 1, 5). The Scobees filed a lawsuit against William Norris in Kentucky federal court, but that case was later dismissed and refiled in Missouri state court, alleging state law negligence claims ("Underlying Litigation"). (PSUMF, ¶¶ 6-8). Mr. Norris died during the pendency of the Underlying Litigation, and a defendant ad litem was appointed at the parties' request. (PSUMF, ¶¶ 9, 12). Lauren Norris was later appointed by the Missouri court as a defendant ad litem in the Underlying Litigation. (PSUMF, ¶ 13). A jury in St. Louis County, State of Missouri, later determined that William Norris caused the accident. *See* PSUMF, ¶ 3, Jury Verdict, entered September 27, 2019;

Judgment, entered October 10, 2019. A judgment was entered in the amount of $7,000,000, in favor of the Scobees and against Lauren Norris in her capacity as a defendant ad litem. (PSUMF, ¶¶ 14-15). At the time of the accident, the Norrises were covered under an automobile insurance policy issued by Defendant USAA CIC ("USAA"), Policy No. 01186 32 37C 7102 1 (the "Norris Policy"), which provided $100,000 in coverage. (PSUMF, ¶ 4).

In this declaratory judgment action, USAA seeks a declaration of its rights in connection with the Norris Policy.  USAA asks this Court to enter a final judgment that: (1) payment of the proceeds under the Norris Policy, subject to its stated policy limit of $100,000, fulfills USAA's obligations under the Norris Policy with respect to the judgment in the Underlying Litigation and will satisfy the judgment entered in that action; and (2) the Scobees cannot bring a direct action against USAA for bad faith under Missouri law so, under Missouri law, the Scobees' maximum recovery against USAA is the Norris Policy's stated limit, $100,000. (ECF No. 63 at 4).

## STANDARD OF REVIEW

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Id.*  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading.  *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.

## DISCUSSION

USAA argues that its obligations under the Norris Policy extend only to the payment of the liability insurance limits provided in the Policy, or $100,000. USAA states, "[t]he fact that Mr. Norris died does not expose USAA CIC to *more* liability under the Policy than it would have had if Mr. Norris had survived through the date of the judgment." (ECF No. 69 at 1 (emphasis in original)). USAA further contends that the Scobees cannot bring a bad faith claim under Missouri law directly against USAA. USAA expressly limits its summary judgment motion to declare the parties' rights and obligations under Missouri law only and to delineate USAA's liability under the judgment to the Norris Policy limits. USAA admits that the declarations sought do not "impact whether Kentucky law provides a remedy to the Scobees." ( ECF No. 69 at 2; ECF No. 69 at 7-9).

When William Norris passed away during the pendency of the underlying action, the Scobees elected to proceed against a defendant ad litem, rather than a personal representative of Mr.

Norris's estate. The Scobees were permitted to pursue a defendant ad litem and attempt to recover the Norris Policy pursuant to Mo. Rev. Stat. §537.021.1(2).[1] Missouri statute 537.021.1 was enacted to allow plaintiffs to proceed against a deceased, liability-insured tortfeasor without having to wait for administration of the probate estate:

> Before this remedial statute was enacted an action against a deceased, liability-insured tort-feasor required the probate appointment of an administrator, and the full panoply of probate proceedings, this on the theory the decedent's liability insurance was an asset of his estate. The obvious legislative purpose of Sec. 537.021, which became effective in 1979, was to simplify this burdensome procedure of normal estate administration in cases where there was no probate estate and the liability insurer was the "real defendant", and to substitute the so-called defendant ad litem for the formerly required administrator; the defendant ad litem is to serve as the named defendant in the capacity of the deceased's legal representative.

*State ex rel. Gannon v. Gaertner*, 592 S.W.2d 214, 216 (Mo. Ct. App. 1979). The record demonstrates that the Scobees unequivocally proceeded against defendant ad litem, Lauren Scobee, and, accordingly, can only recover under the limits of the Norris Policy for purposes of the underlying judgment:

---

[1] A personal representative of the estate of a wrongdoer upon the death of such wrongdoer; provided that, if a deceased wrongdoer was insured against liability for damages for wrongdoing and damages may be recovered from the wrongdoer's liability insurer, then the court in which any such cause of action is brought shall appoint at the request of the plaintiff or other interested party a qualified person to be known as a defendant ad litem. The defendant ad litem when so appointed shall serve and act as the named party defendant in such actions in the capacity of legal representative of the deceased wrongdoer and such appointment and any proceedings had or judgment rendered in such cause after such appointment shall be binding on the insurer of such deceased wrongdoer to the same extent as if a personal representative had acted as the legal representative of such deceased wrongdoer in such cause of action. Should the plaintiff in such cause of action desire to satisfy any portion of a judgment rendered thereon out of the assets of the estate of such deceased wrongdoer, such action shall be maintained against a personal representative appointed by the probate division of the circuit court and the plaintiff shall comply with the provisions of the probate code with respect to claims against decedents' estates. Nothing in this section shall be construed to permit a plaintiff in such cause of action to pursue other assets of a decedent's estate after the expiration of the time provided in section 473.444.
Mo. Rev. Stat. §537.021.1(2)

> Section 537.021.1 lists two ways to recover against a deceased wrongdoer. First, the court may appoint a defendant ad litem the plaintiff can then attempt to recover against. *Id*. Significantly, the defendant ad litem is tasked with representing the interests of the deceased wrongdoer and the plaintiff can only recover against the deceased wrongdoer's liability insurance. *Id*. Second, a plaintiff can recover against both the deceased wrongdoer's estate and his liability insurance, as long as the plaintiff takes certain actions. *Id*. Here, both parties agree this case deals with only the first option—recovery against the deceased wrongdoer's liability insurance.

*Scobee v. Norris*, 620 S.W.3d 262, 265 (Mo. Ct. App. 2021). The Eighth Circuit has expounded upon the limited role of a defendant ad litem:

> If a deceased tortfeasor is insured and the injured party seeks recovery from the insurer only, the court will appoint a defendant ad litem for the deceased. [§ 537.021.1(2)] On the other hand, if the deceased tortfeasor is uninsured, or if the injured party wishes to recover any part of a judgment from the assets of his estate rather than the insurance policy, the court will appoint a personal representative to stand in place of the deceased in the proceedings. *Id.* The distinction seems relatively simple: the court appoints a personal representative whenever the assets of the estate are potentially involved, and a defendant ad litem whenever the sole assets involved are those of the deceased's insurer. *See In re Estate of Hayden,* 837 S.W.2d 31, 32 (Mo. Ct. App. 1992).

*Am. Home Assur. Co. v. Pope*, 487 F.3d 590, 605 (8th Cir. 2007).

The Scobees cite to no case law to support their assertion that USAA could be liable in excess of the $100,000 Norris Policy limits, not to mention for the $7,000,000 underlying judgment against defendant ad litem Lauren Norris. The Scobees attempt to argue that *Litton v. Kornbrust* "directly refutes USAA CIC's contention that the policy limit is the only obligation of an insurer in situations related to a judgment against a defendant ad litem." (ECF No. 67 at 9) (citing *Litton v. Kornbrust*, 85 S.W.3d 110 (Mo. Ct. App. 2002)). In *Litton*, the Missouri Court of Appeals stated, "[h]ad Appellant prevailed at trial, any deposition expense incurred by Appellant would have been nominally taxed against the defendant *ad litem,* and Mr. Kornbrust's insurer would have been bound to pay those costs as part of the judgment. *§ 537.021.1(2).*" 85 S.W.3d at 117. The Scobees extrapolate from this *Litton* dicta that, "[w]hile costs are nominal, they still

- 5 -

speak to the point that an insurer's obligation does not stop at the policy limit" and USAA "has no support for the leap it is asking this Court to make by asking for a determination limiting the Scobees to the Policy's $100,000 limit." (ECF No. 67 at 10). This Court disagrees. The *Litton* court's premise that an insured may be responsible for the taxing of admittedly nominal costs against a defendant ad litem does not support a finding that an insured can be obligated to pay any amount of damages awarded, particularly if those damages are in excess of the insurer's policy limits and where "the sole assets involved are those of the deceased's insurer." *Pope*, 487 F.3d at 605.

The Court finds that, under the terms of the contract, the Scobees are limited to the $100,000 policy limit of the Norris Policy for any recovery against USAA for the judgment in the Underlying Action against the defendant ad litem. Although this is the limit of liability, the Court finds that the USAA's obligations have not been satisfied. The Court notes that, despite ample opportunity, USAA has never paid or deposited any money into this Court's or the Circuit Court of St. Louis County, State of Missouri's court registry. *See* Defendants' Response to Statement of Material Facts, ECF No. 68, ¶ 9.[2]  Therefore, the Court will deny entry of summary judgment in favor of USAA. In addition, the Court determines that the legislature of Kentucky has imposed additional obligations upon insurers doing business in that state. Among those obligations, an insurer must not run afoul of the Unfair Claims Settlement Practices Act, KRS § 304.12-230. The Scobees have brought a claim, which remains pending, under the Kentucky Unfair Claims Settlement Practices Act in Case Number 4:22cv488-JAR. Based upon USAA's failure to pay its $100,000 policy limits and the pendency of the Scobee's claim under the Kentucky Unfair Claims Settlement Practices Act, the Court cannot hold as a matter of law that

---

[2] USAA claims that the Scobees have refused USAA's attempts to satisfy the judgment by paying $100,000. (PSUMF, ¶ 18).

USAA has satisfied all of its obligations under the contract.   The Court, therefore, denies USAA's Motion for Declaratory Judgment as to USAA's claim that payment of the proceeds under the Norris Policy, subject to the Norris Policy's stated limit of $100,000, will fulfill all of USAA's obligations under the Norris Policy.

The next question is whether the Scobees can proceed on a bad faith claim directly against USAA under Missouri law.  USAA argues that a third-party is not permitted to bring a bad faith claim against an insurer under Missouri law absent an assignment from an insured:

> An insurer's duty to act in good faith in settling third-party claims arises from the insurer's reservation in the policy of the exclusive right to contest and settle third-party claims. [*Zumwalt v. Utilities Ins. Co.*, 228 S.W.2d 750, 753 (1950)] An action for the breach of that duty, while a tort, arises from a contract of insurance, which is not of a purely personal nature. Therefore, a bad faith refusal to settle action falls within the category of assignable torts. *See* [*State ex rel. Park Nat. Bank v. Globe Indem. Co.*, 61 S.W.2d 733, 736 (1933)].

*Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 829–30 (Mo. 2014).  The Scobees do not have an assignment from Mr. Norris, Lauren Norris, or Mr. Norris's estate (nor was an estate opened). (PSUMF, ¶ 17). Moreover, Lauren Norris, as a defendant ad litem, cannot assign a tort claim to the Scobees.  Indeed, the Eighth Circuit recognized the limits of a defendant ad litem when bringing suit:

> If defendants ad litem were given the authority to sue for tort claims on behalf of the estate, … it would render the state-law distinction between defendants ad litem and personal representatives meaningless. Missouri makes this distinction because "the 'real defendant' [in suits against a defendant ad litem] is the liability insurer." *Atlanta Cas. Co. v. Stephens,* 825 S.W.2d 330, 333 (Mo. Ct. App. 1992). By asserting his counterclaims, [plaintiff] is attempting to expand the limited scope of his status as defendant ad litem by asserting independent claims that belong to the estate, of which he is not the personal representative under Missouri law.

*Pope*, 487 F.3d at 605.

In sum, a bad faith claim is an assignable tort under Missouri law. The Scobees have not asserted that Lauren Norris, defendant ad litem, assigned a Missouri bad faith claim to them, nor could she under the law.  The case law makes clear that any Missouri bad faith claim would belong to the estate of Mr. Norris alone, but no probate estate was opened for Mr. Norris (PSUMF, ¶ 11).[3] Given that there has been no assignment, the Court grants USAA's Motion for Summary Judgment, in part, and holds that Scobees cannot bring a direct action against USAA for bad faith under Missouri law. The Court's ruling, however, does not impact any claim that the Scobees may have under Kentucky law, including their claims in *Scobee et al. v. USAA Casualty Insurance Company*, 4:22-cv-488-JAR.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff USAA Casualty Insurance Company's Motion for Summary Judgment (ECF No. 62) is **GRANTED**, in part, and **DENIED**, in part. The Court denies summary judgment on USAA's claim that payment of the proceeds under the Norris Policy, subject to the Norris Policy's stated limit of $100,000, will fulfill USAA's obligations under the Norris Policy with respect to the judgment in the Underlying Litigation and will satisfy judgment entered in that action. The Court grants summary judgment as to USAA's claim that the Scobees cannot bring a direct action against USAA CIC for bad faith under Missouri law.

**IT IS FURTHER ORDERED** that the Court will set a trial date in this action at a later date, after the Court has issued a decision on Defendant's Motion for Summary Judgment in 4:22cv488.

---

[3] The Scobees argue that it "remains unknown if a probate estate was opened for William Norris upon his death." (ECF No. 68, ¶ 4).

Dated this 29th day of March, 2024.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**